SHARP *et al. v.* LEARNED.

(Division B.  May 16, 1938.)

[181 So. 142.  No. 33208.]

(Division B.  June 20, 1938.)

[182 So. 122.  No. 33208.]

Jones & Stockett, of Woodville, Engle & Laub, of Natchez, and Sholars & Gunby, of Monroe, La., for appellants.

Brandon & Brandon, of Natchez, for appellee.

**Brandon & Brandon**, of Natchez, and **Wells, Wells & Lipscomb**, of Jackson, for appellee, on Suggestion of Error.

Argued orally by **A. H. Jones** and **S. B. Laub**, for appellant, and by **Gerard Brandon**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee filed his bill in the chancery court of Adams county against appellants, R. B. Sharp and Mason Stricker, to enjoin them from prosecuting any suit in the courts of Louisiana against appellee for cutting timber from the lands known as Diamond Island Towhead in the Mississippi river. Appellants demurred to the bill both generally and specially. The demurrers were overruled, and appeal granted appellants to settle the principles of the cause.

The bill alleges in substance that appellee and appellant Sharp are resident citizens of Adams county in this state, and that appellant Stricker is a resident citizen of Wilkinson county in this state; that appellee had cut and removed timber from Diamond Island Towhead; that he claimed title to the island through a land patent from this state and other conveyances describing the land as situated in Warren county in this state; that appellants claimed title to the island through Louisiana grantors and by virtue of the laws of that state, in which they claimed it is situated. The location of the island—whether in Louisiana or in Mississippi—is set out in paragraphs 4 and 5 of the bill as follows:

"That amongst the tracts of land and real estate claimed and owned by the Complainant is a tract of land in Warren County, Mississippi, known as Diamond Island, or Diamond Island Towhead, being largely timbered lands, and therefrom your Complainant has recently cut, severed, and removed certain trees and timber.

"(5) That because of the changes in the course of navigable stream of the Mississippi River, said Diamond Island or Diamond Island Towhead is now situated to the Westerly side of the present navigable stream of the Mississippi River, and is joined in most part to the Louisiana shore."

The bill charges that appellants were threatening to bring suit against appellee in the courts of Louisiana for the alleged trespass in the cutting of the timber; that appellee owned real estate of large value free from encumbrance in the counties of Adams, Jefferson, Claiborne, and Warren in this state, and also in the parishes of Concordia, Tensas, East Carroll, and Madison in Louisiana; that it would be unfair, unjust, harassing, and expensive to appellee to be forced into the courts of Louisiana to defend the threatened action by appellants. An injunction was issued and served on appellants in accordance with the prayer of the bill.

We are of the opinion that the chancellor was in error in sustaining the bill. We reach that conclusion upon the following considerations: In paragraph 4 of the bill it is alleged that Diamond Island Towhead is situated in Warren county in this state; however, in view of the facts set out in paragraph 5 that was a mere conclusion of the pleader. In paragraph 5 the facts are stated; they show without doubt that the island is situated in the state of Louisiana and not in Warren county in this state. It is therein set forth that because of the changes in the course of the Mississippi river the island is now "situated to the Westerly side of the present navigable stream of the Mississippi River, and is joined in most part to the Louisiana shore." The boundary line of a navigable river between two states is the thread of the stream and continues with gradual changes in the thread; however, if the thread is changed by an avulsion the line remains where it was. Arkansas v. Mississippi, 250 U. S. 39, 39 S. Ct. 422, 63 L. Ed. 832; Arkansas v. Mississippi, 252 U. S. 344, 40 S. Ct. 333, 64 L. Ed. 605; Louisiana v. Mississippi, 282 U. S. 458, 51 S. Ct. 197, 75 L. Ed. 459.

There is no allegation in the bill that Diamond Island Towhead was thrown on the west side of the thread of the river by an avulsion. Applying the rule that a pleading must be construed most strongly against the pleader, the bill means that Diamond Island is now situated in Louisiana; that it was so situated when the alleged trespass took place, and if it was ever situated on the Mississippi side of the river it has gone to the Louisiana side by gradual change in the thread of the stream and not as the result of an avulsion.

We have here, therefore, an alleged trespass on land situated in Louisiana. Appellants claim title to the land under the laws of that state, while appellee claims title under the laws of this state. All the parties are residents of this state. As to whether there was a trespass

depends on where the title is, and the final question is whether that question should be settled by the courts of Louisiana or the courts of Mississippi. Ordinarily, a court of equity will not restrain the prosecution of a suit in another state unless a clear equity is made out, requiring the interposition of the court to prevent manifest wrong or injustice. 14 R. C. L., p. 417, sec. 119. The comparative convenience or inconvenience of the parties as the result of granting or withholding the injunction sought should be considered, and none should be granted if it would operate oppressively or inequitably, "or contrary to the real justice of the case." 14 R. C. L., p. 358, sec. 60. Although Platte Fisheries v. Wadford, 170 Miss. 617, 155 So. 161, is not directly in point on its facts, it supports those principles.

Sutton v. Archer, 93 Miss. 603, 46 So. 705, is nearer in point on facts and principles. That was a suit by Sutton and others to confirm their alleged title, and the cancellation of Archer's claimed title to Towhead Island and Island No. 83 in the Mississippi river. The complainants deraigned title from the United States government. The two islands formerly lay in the river near the Mississippi side of the main channel and had been recognized by the federal government as being in Washington county in this state; they were gradually washed away and the course of the river gradually shifted from the Arkansas side, these changes being accompanied by a slow accretion of land onto the Arkansas side, until the place where the islands had been became a part of the Arkansas bank of the river. The defendants, whose grantors were owners of the land in Arkansas from which the river had gradually receded and to which the accretion had gradually added area, proved that the site of the two islands had by accretion and change of the river become a part of their property on the Arkansas side of the stream. The court held that although the islands were originally in Mississippi they were grad-

ually washed away by a change in the channel of the river and deposited upon a projection on the Arkansas shore, and that thereby they became a part of the lands of that state, and the courts of Mississippi had no jurisdiction over them; that the courts of this state have no jurisdiction over the subject matter of a suit involving the contested title to land situated in another state where there is no question of specific performance of a contract, enforcement of trust, or the doing of any act which from previous dealings is binding on the conscience of the parties, although the court had jurisdiction of the parties.

Here the land is in Louisiana. If there was a trespass it took place in that state. The foundation of the suit is the title to the land—whether in appellants or appellee—and that question is solvable by the laws of Louisiana. It is not a transitory action. Section 495, Code 1930, declares the policy of the state with reference to the venue of actions for trespass on lands. It provides, among other things, that actions for the actual value of trees, for the statutory penalty for cutting and boxing trees and firing woods shall be brought in the county where the land or some part thereof is situated. We do not mean to hold that this statute is controlling here, but we do hold that by its enactment the Legislature recognized that it would be to the best interest of the parties concerned that such actions be brought in the venue where the trespass was committed.

Reversed and remanded.

**Griffith, J.**, delivered the opinion of the court on Suggestion of Error.

The original opinion, construing the bill on the demurrers thereto most strongly against the pleader, as has been the established rule throughout the judicial history of this State, responded to the bill so construed

by reversing the decree and remanding the cause. A lengthy suggestion of error has been filed, based chiefly upon asserted differentiating facts not contained in the bill, construed as aforesaid, and the court is requested to decide according to the said newly asserted facts, which, of course, we cannot do.

It is manifest, therefore, that upon the return of the record the bill will be amended, and thereupon a different case will be presented; wherefore, instead of the interlocutory appeal having operated to settle all the controlling principles of the case or to prevent delay, it will have settled nothing of any substantial value and will have caused delay,—instead of settling anything it has simply furnished a means for a preliminary piecemeal discussion with this court. These are the fruits in too many cases under our statute allowing interlocutory appeals.

Suggestion of error overruled.