JACOBSON, et al. *v.* JONES, et al.

No. 41098 May 4, 1959 111 So. 2d 408

*Teller, Biedenharn & Rogers,* Vicksburg; *Theus, Grisham, Davis & Leigh,* Monroe, La.; *Berger, Callon & Zuccaro,* Natchez, for appellants.

*Brandon, Brandon, Hornsby & Handy,* Natchez; *Williamson & Williamson,* Monticello, Ark.; *Thompson, Thompson & Sparks,* Monroe, La., *Spencer, Sevier .& Adams,* Tallulah, La., for appellees.

646

Roberds, P. J.

This cause involves the correctness of the action of the Chancery Court of Adams County, Mississippi in (1) overruling demurrers, special and general, to the cross-bill filed by Jones, and (2) its refusal to either abate this proceeding or permit the complainants to dismiss their original bill, and (3) the issuance of temporary and permanent injunctions prohibiting the complainants from proceeding in any and all courts except that of the Chancery Court of Adams County. The questions arise under these circumstances.

On January 4, 1956, Harry A. Jacobson and Mrs. Jean G. Jacobson, residents of Warren County, Mississippi, and Marian W. Gillan, a resident of Lincoln, Nebraska, filed a petition in what is termed a possessory action in the Sixth Judicial District of Louisiana against the four defendants, all named Jones, residents of Adams County, Mississippi, averring that complainants owned what is called Paw Paw Island, also called Island No. 103 and My Wife's Island (which we will call Paw Paw) situated in Louisiana, and that the defendants had wrongfully cut and removed from said island large quantities of timber, and complainants sought to recover from the Joneses the value of such timber.

Fearing that the statute of limitations might run against them, said petitioners in the Louisiana action also filed a bill against the four Joneses in the Chancery

Court of Adams County, Mississippi on January 12, 1956. In this bill the complainants averred that they were the owners of Paw Paw Island and that the four Joneses had wrongfully cut and removed said timber from said island and converted it to their own use and they were liable to the complainants for the value thereof. In this opinion we shall call the petitioners in the Louisiana action and those filing the bill in the Chancery Court of Adams County complainants and we shall refer to the four Joneses as defendants.

On March 16, 1956 the defendants filed an answer in the Adams County proceeding in which they admitted they had cut and removed the timber, but as a defense to the suit by the complainants, they claimed they were the owners of Paw Paw Island and of the timber which they had cut and removed therefrom and that, therefore, the complainants were not entitled to any decree against them.

Defendants then made their answer a cross-bill. They averred that they had title to the land and the timber. They alleged that complainants had no interest in the land or the timber and they prayed that the chancery court decree them to be the owners of the Louisiana land and adjudicate that the complainants had no title or interest therein and that the claim of the complainants constituted a cloud upon their title and they asked that such cloud be removed and they then prayed for general relief.

In other words, the cross-bill was, in effect, a proceeding to quiet and confirm title and remove clouds thereon and for general relief.

Complainants filed demurrers, special and general, to the cross-bill, asserting that the Chancery Court of Adams County, Mississippi, did not have authority or power to adjudicate and quiet title to lands admittedly located in the State of Louisiana, and remove claims

thereto as clouds thereon. The court overruled said demurrers.

On March 16, 1956 the Chancery Court of Adams County, without notice to complainants, issued a temporary injunction enjoining complainants from resorting to any court anywhere except the Chancery Court of Adams County in which this cause was pending. Complainants moved the court to dissolve the temporary injunction which motion was overruled. The chancellor also refused to grant an appeal to the Supreme Court of Mississippi from his action in overruling the demurrers and denying the motion to dissolve the temporary injunction.

After the demurrers were overruled and the motion to dissolve the injunction had been denied, the complainants, on September 28, 1956, filed an answer to the cross-bill. This answer, in brief, admitted that title in one other than the complainants would be a good defense to the bill filed herein, but denied that, aside from a mere matter of defense, the Adams County Court had any power to adjudicate title to lands located in Louisiana. Complainants then moved the court to abate the trial of this cause until termination of the proceedings in Louisiana, or to transfer this cause to the Circuit Court of Adams County, or permit the complainants to dismiss their bill without prejudice. The chancellor overruled the foregoing motion in toto.

On February 28, 1957 complainants in this cause petitioned the court for permission to amend the answer to the cross-bill so as to again demur on the ground of jurisdiction and renew their motion to dissolve the injunction. This petition was denied. The cause went to trial over the protests of the complainants. They refused to introduce any proof. The defendants, under their cross-bill, proceeded to introduce a large volume of testimony bearing upon their title to the lands. At the close of the testimony the chancellor entered a de-

cree adjudicating the Joneses to be the owners of Paw Paw Island, and undertaking to remove as clouds upon the title of the Joneses all claims of every type and character of the complainants to said land, and quieting the title to the lands in the Joneses. He dismissed the bill and sustained the cross-bill.

He also made permanent the temporary injunction which had theretofore enjoined and restrained complainants from asserting any title or claim to said Paw Paw Island. From this final decree complainants appealed to this Court.

■■ ■ It was error to overrule the demurrer raising the question of jurisdiction of the Mississippi court to adjudicate title to and remove clouds from lands in Louisiana. If the timber did not belong to the complainants, this fact was a good defense to the bill seeking recovery for the value of the timber. That would be true regardless whether Jones or someone else was the owner. ■■ ■ Set up as affirmative matter in a cross-bill it was in effect the same as an original bill undertaking to quiet and confirm title and remove a cloud thereon. This could not be done directly by a Mississippi court as to title to land located in another State. In Sharp, et al. v. Learned, 182 Miss. 333, 181 So. 142, this Court said: "* * * that the courts of this state have no jurisdiction over the subject matter of a suit involving the contested title to land situated in another state where there is no question of specific performance of a contract, enforcement of trust, or the doing of any act which from previous dealings is binding upon the conscience of the parties, although the court had jurisdiction of the parties." The facts of this case do not bring it within any of the foregoing stated exceptions to the rule.

The rule seems to be universal. In Lyle Cashion Co. v. McKendrick, 227 Miss. 894, 87 So. 2d 289, this Court, while recognizing the stated exceptions, said: "It is a

universal rule that a judgment of the courts of one state can not directly affect and determine the title to real property located in another state.'' In Butler v. Bolinger, 133 So. 778, the Court of Appeals of Louisiana said: ''Real estate is governed by the law of its situs, and a decree of another state does not operate directly upon the property nor affect the title.'' In 14 Am. Jur., Sec. 238, page 430 the general rule is announced in this language: ''* * * A court in one state is without jurisdiction to partition land situated in another state, to quiet title to real estate located beyond its boundaries, to pass the title to land situated in another state, to annul a deed of land in another state even though it appears that such deed was fraudulently obtained, or to render a binding judgment in the foreclosure proceedings as to lands located in another state.''

Indeed, Sec. 1274 of the Mississippi Code of 1942 provides that where actions are brought in Mississippi such ''suits to cancel clouds or remove doubt therefrom shall be brought in the county where the land, or some part thereof, is situated.''

In 50 C. J. S., page 471, paragraph 889 this statement is found: ''The constitutional and statutory provisions for the recognition of the judgment of a sister state do not support to give to a judgment or decree any extraterritorial effect, especially as regards real property.''

The personal appearance of the parties in the proceeding cannot confer jurisdiction over the subject matter. In 14 Am. Jur., page 386, Sec. 191 appears this pronouncement: ''As heretofore shown, the jurisdiction of the court over the subject matter of a cause of action must be conferred by law, and it cannot under any circumstance be conferred on a court, as such, by consent of the parties. It materially follows that if jurisdiction cannot be conferred by consent, the want thereof cannot be waived by any act of the parties.''

Superior title to the Louisiana lands in any person to that of the complainants is a good defense to the suit by the complainants but it cannot be made the basis for an affirmative decree of the court acting directly on the land to establish title in the defendants and remove the claim of another as a cloud upon that title. It was error to overrule the demurrers presenting this question to the trial court.

 █ As to contention (2) above, we are of the opinion the learned chancellor should either have abated the Adams County proceeding, awaiting trial of the Louisiana case which had already been filed, or should have permitted the complainants to voluntarily dismiss their bill upon payment of all costs. Griffith, in his Mississippi Chancery Practice, 2d Edition, page 550, paragraph 435, discusses the right of a complainant to voluntarily dismiss his bill. He there states that the right to do so is placed beyond question by Secs. 1538 and 1539, Code of 1942, which are applicable to equity courts as well as law courts. In said Sec. 534 he mentions certain exceptions which might preclude the right of dismissal in the discretion of the chancellor. However, we discern no exception which encompasses the circumstances involved here. Defendants had defended the suit and had obtained a temporary injunction. The injunction was wrongfully sued out and the mere fact that a defendant has been put to the inconvenience and expense of defending a suit is not enough to prevent dismissal by complainant. Griffith sums up the right in these words: ''If the dismissal will leave the defendant as to all the substantive incidents of the suit in the same position in which he would have stood had the suit not been instituted the right to dismiss is unimpaired until final submission to the chancellor on the merits.'' █ As to the issuance of the injunction the case of Sharp v. Learned, supra, appears to be in point. In that case the appellees filed an original bill to enjoin appellants

from instituting an action in the courts of Louisiana for cutting trees. In the case at bar the defendants, by cross-bill, procured an injunction against proceeding with a suit already filed to recover the value of trees which had been cut and removed from lands in Louisiana. In that case all the parties were residents of Mississippi. In the cause at bar two of the complainants reside in Mississippi and one resides in Nebraska. In that case both parties were claiming under separate chains of title, which is the case in this cause. In that case the bill charged that appellants were threatening to bring suit against appellees in Louisiana; that appellees own real estate of large value in several counties in Mississippi and in several parishes in Louisiana and that it would be unfair and unjust and expensive to appellees to be forced into the courts of Louisiana to defend the threatened suit. An injunction was issued in accordance with the prayer of the bill. The facts in that case, in all essential respects, are the same as the facts in the case at bar except that in the cited case filing of suit had been threatened, whereas in the case at bar suit had already been filed in Louisiana. This court in reversing the foregoing action of a trial court used this language: "We have here, therefore, an alleged trespass on land situated in Louisiana. Appellants claim title to the land under the laws of that state, while appellee claims title under the laws of this state. All the parties are residents of this state. As to whether there was a trespass depends on where the title is, and the final question is whether that question should be settled by the courts of Louisiana or the courts of Mississippi. Oridinarily, a court of equity will not restrain the prosecution of a suit in another state unless a clear equity is made out, requiring the interposition of the court to prevent manifest wrong or injustice. 14 R. C. L. page 417, Sec. 119. The comparative convenience or inconvenience of the parties as the result of granting or with-

holding the injunction sought should be considered, and none should be granted if it would operate oppressively or inequitably, 'or contrary to the real justice of the case.' 14 R. C. L. page 358, Sec. 60. Although Platte Fisheries v. Wadford, 170 Miss. 617, 155 So. 161, is not directly in point on its facts, it supports those principles. * * * Here the land is in Louisiana. If there was a trespass it took place in that state. The foundation of the suit is the title to the land—whether in appellants or appellee—and that question is solvable by the laws of Louisiana. It is not a transitory action. Section 495, Code 1930, declares the policy of the state with reference to the venue of actions for trespass on lands. It provides, among other things, that actions for the actual value of trees, for the statutory penalty for cutting and boxing trees and firing woods shall be brought in the county where the land or some part thereof is situated. We do not mean to hold that this statute is controlling here, but we do hold that by its enactment the Legislature recognized that it would be to the best interest of the parties concerned that such actions be brought in the venue where the trespass was committed. Reversed and remanded.''

The cases note the fact that courts are much more reluctant to enjoin proceedings in courts where suits have already been instituted than to enjoin one from instituting such suits. See case note 21 L. R. A., page 75.

 It seems to be well settled that personal actions may proceed to judgment simultaneously in two courts with the right to plead res judicata as to the judgment first rendered, in the other court, Kline v. Burke Construction Company, 260 U. S. 226; Streckfus Steamers, Inc. v. Kiersky, Assessor, 174 Miss. 125, 163 So. 830.

Another objection to the issuance of an injunction prohibiting complainants from proceeding in any court other than the Chancery Court of Adams County, Mississippi,

is the fact that in the pending Louisiana proceedings, one Dewitt Smith, who appears to have cut and removed a large quantity of the timber, and one E. C. Woodyear, who claims some kind of a title to or right in the lands in controversy, are parties to the proceeding in Louisiana. In other words Smith and Woodyear are not before the Mississippi Court. We are of the opinion the injunctions were wrongfully granted.

Reversed and remanded.

*Lee, Kyle, Arrington,* and *Gillespie, JJ.,* concur.