ELIZABETH HUNTER v. WILLIAM H. CROOK, EXECUTOR.

[47 South. 430.]

WILLS. *Construction. Conditional sales. Legacies.*

> Where, upon a conditional sale of horses, the seller retained title to them as security for the purchase-money and died before collecting it, neither the horses nor the debt passed to a legatee to whom he bequeathed all of his horses.

FROM the chancery court of Washington county.

HON. PERCY BELL, Chancellor.

Mrs. Hunter, appellant, excepted to the accounts of Crook, appellee, executor of the last will of Jesse A. Crook, deceased, claiming that she was entitled under the will of decedent to certain horses, for which the executor had not accounted to her.

The exception was disallowed and the good woman appealed to the supreme court.

The facts of the case are sufficiently apparent from the opinion of the court.

*H. C. Watson,* for appellant.

The title to the horses was retained in the testator until they should be paid for, and they ought to have gone to appellant under clause two of the will.

The second clause of the will should have been construed to give appellant all of the live stock which testator owned at the time of the making of the will, whether on Honey Oak plantation or not, and certainly the testator, at least, meant to give her all the horses on Honey Oak plantation, for it was evidently the purpose of the testator that she should have this particular plantation, with the live stock thereon, as then being used for operating the same.

The testator had title to the horses until the purchase money had been paid, and having the title he could bequeath them to appellant, and under that bequest the horses would go as well as the purchase money owing for them.

The character of the title to the animals in question held by testator is well defined in the following cases, to-wit: *Leflore v. Miller,* 64 Miss., 1 South. 99; *Burnley v. Tufts,* 66 Miss. 48, 5 South. 627; *Ham v. Cerniglia,* 73 Miss. 290, 18 South. 577.

*William Griffin,* for appellee.

If the horses had been sold as appellant contends, reserving title as security for the purchase money, the reservation was simply security for the debt, and title immediately vested in the purchaser upon the payment of the purchase price, whether the same was paid by him, or some one for him. Immediately upon payment the lien of decedent ceased, and the title to the horses vested in the purchaser. Appellant could not successfully maintain a suit against the purchaser for the horses, and

she has no interest in the purchase price paid to the executor under the will. *Leflore v. Miller,* 64 Miss. 204, 1 South. 99; *Foundry Co. v. Ice Co.,* 72 Miss. 608, 18 South. 364; *McPherson v. Acme I. Co.,* 70 Miss. 649, 12 South. 857.

CALHOON, J., delivered the opinion of the court.

Elizabeth Hunter excepted to the first annual and final account of William H. Crook, executor of the will of Jesse A. Crook, deceased, as to one matter. The will of Jesse A. Crook in its second clause reads as follows:

"I give, devise, and bequeath to Elizabeth Hunter, now residing on my Honey Oak plantation, hereinafter described, all of the mules, horses, cattle, hogs, and all other live stock now owned by me."

When he died, the testator owned absolutely and worked about six mules and four horses. In addition to these, he had sold twenty or more of the horses to tenants, either absolutely or by conditional sale. The plantation books of account showed that the tenants who had bought this stock were severally charged with the animals they received from the decedent. There is no notation in the books of any conditional sale whatever. In this litigation Elizabeth Hunter claims all balances due on these horses so sold. The executor had promptly turned over to her the six mules and four horses which the testator owned absolutely, and she had never intimated that she made any claim to the animals sold. The testator appears to have been a man of wealth. In his will, in addition to the bequest in the second clause thereof, he devises, in the third clause, to her for life, with the remainder in fee for her children, John Henry Crook, Alberta Crook, Jesse Crook, Sue James Crook, William McKinley Crook, and Arthur Crook, his Honey Oak plantation, containing six hundred and sixty acres. By the fourth clause he devises and bequeathes to his brothers and sisters and their descendants another plantation.

In support of her claim for the horses sold the tenants, she

produces as a witness, her son Arthur Crook, who seems to know nothing as to the character of the sale of the horses to the tenants by the deceased. He simply testified that the men to whom the horses were severally sold took them out of the lot, and he was present at. the time, and he says he does not know whether there was any reservation of title until payment or not. She also produces as a witness, her son John Henry Crook. This man says he was present at the sales by the deceased of all the animals, and that he was to a large extent bookkeeper of the deceased, and he testified that the sales were made with the reservation of title in the deceased until the horses were paid for. In the progress of his examination it appeared that the sales were by written contracts with the purchasers, several of which he says he witnessed and was present when they were drawn up. When asked where the written contracts were, he testified that he did not have the contracts, but says: "My mother might have them." Not one of these contracts is produced, nor is there any testimony that any search has been made for them. So, under all the circumstances, we are not prepared to say that we would not affirm the chancellor, even if he had held that the evidence did not show a conditional sale, as perhaps, he did hold.

But we hold that under the terms of this will the deceased, when he said the mules and horses "owned by me," meant those only which he absolutely owned. It should have been stated that these tenants, many of them, paid to the executor the balance due as shown by the plantation books and retained the horses, and that some of them had the balances paid by neighboring planters to the executor, and the tenants took the horses, and that Elizabeth Hunter herself had paid balances to the executor for tenants she proposed to retain on Honey Oak, whereupon these tenants held the horses. When the bequest was of all the horses "owned by me," it did not refer to horses conditionally sold. The sale, with title reserved and possession given under it, is none the less a sale. It is a conditional sale, with reservation of title as security for a debt. *Ross v. Pasca-*

*goula,* 72 Miss. 608, 18 South. 364; *McPherson v. Acme,* 70 Miss. 649, 12 South. 857; *Leflore v. Miller,* 64 Miss. 204, 1 South. 99—all cited by counsel.

In such case the debts for the purchase money went to the executor. The payment of the balances on the animals was to be made to the vendor to complete title, and, when made, would have extinguished the condition; and, being due deceased, it became due to his executor, being a debt to the vendor, though secured by a right to resort to the thing for payment.

*Affirmed.*